United States District Court
Southern District of Texas
**ENTERED**
June 11, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KEITH HANDY, TDCJ #02092751, | § § § § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-19-2696 |
| LORIE DAVIS, | § § § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

At the time the petitioner, Christopher Keith Handy (TDCJ #02092751), filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, he was a state inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). (Doc. No. 1). Handy challenges his guilty plea for a 2016 Texas state court conviction for terroristic threat and his ineligibility for mandatory supervision. Respondent has filed a motion for summary judgment (Doc. No. 33), and Handy has filed a response in opposition (Doc. No. 42). After carefully considering the petition, motion for summary judgment, response, entire record, and applicable law, the Court concludes that this petition must be dismissed for the reasons that follow.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On September 29, 2016, Handy entered a guilty plea in the 182nd Judicial District Court of Harris County, Texas, in cause number 1481109 to terroristic threat and was sentenced without a plea recommendation to four years' imprisonment.[1] In the plea hearing, the trial court

---

[1] *See* Petition, Doc. No. 1, at 1. Citations following "Doc. No. ---" reflect the Clerk's pagination as stamped by the CM/ECF system.

1 / 18

indicated that there would be no deadly weapon finding for cause number 1481109.[2] The Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession, which Handy signed, provides:

> In open court and prior to entering my plea, I waive the right to trial by jury. I also waive the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination. The charges against me allege that in Harris County, Texas, CHRISTOPHER KEITH HANDY, hereafter styled the DEFENDANT, on or about August 29, 2015, did then and there unlawfully, threaten to commit an offense involving violence, namely, MURDER, upon MEMBERS OF THE HARRIS COUNTY SHERIFF'S OFFICE with the intent to INFLUENCE THE CONDUCT AND ACTIVITIES of a[n] agency of the State of Texas.[3]

The trial court accepted Handy's guilty plea and made no finding of a deadly weapon in cause number 1481109.[4] Handy did not directly appeal his conviction.

After he was remanded to TDCJ custody, Handy discovered that he was not eligible for mandatory supervision because he had been previously convicted of aggravated assault in Texas cause number 727971, a 1997 conviction that had an affirmative deadly weapon finding.[5] Among other things, he contests the TDCJ's determination that he is not eligible for mandatory supervision based on that earlier conviction and claims that such determination violates the Ex Post Facto Clause. He also contends that there was a "breach of contract" by the trial judge because there was no meeting of the minds regarding the application of the prior deadly weapon finding.

---

[2] Doc. No. 34-10 at 78:20-25.
[3] Doc. No. 34-3 at 37.
[4] *Id.* at 38.
[5] *See* Doc. No. 34-10 at 31.

On January 15, 2017, Handy filed his first state application for a writ of habeas corpus, but that application was dismissed as noncompliant.[6] On June 6, 2017, he filed a second state application for a writ of habeas corpus, which was denied without written order on July 3, 2019.[7] This federal petition under 28 U.S.C. § 2254 followed.

Handy raises the following claims in his federal petition:[8]

(1) The state courts unduly delayed consideration of his state habeas application by taking two years to deny it;

(2) His state habeas application was denied based on fraudulent affidavits from trial counsel;

(3) His plea bargain was violated because he was promised there would be no deadly weapon prosecution, and his trial counsel just stood by mute during the plea transaction;

(4) He did not plead guilty to an indictment because an indictment was not presented to him and he was not adjudicated for a deadly weapon in the primary case;

(5) He is being prosecuted for a deadly weapon offense in absentia;

(6) He has been prosecuted in absentia for a deadly weapon element;

(7) His counsel was unconstitutional because he never hired his trial attorney, she forged their representation contract, and she was an agent of the State;

(8) His prosecution for a deadly weapon is an ex post facto violation;

(9) His ineligibility for mandatory supervision release under Texas Government Code 508.149(3g) is a due process and ex post facto violation because it never allows the past conviction to be final or expire;

---

[6] See Doc. No. 34-3 at 21; Doc. No. 34-1 (Action Taken Sheet for WR-34,467-17).
[7] See Doc. No. 34-9 at 23; Doc. No. 34-4 (Action Taken Sheet for WR-34,467-23).
[8] To the extent possible, the Court has numbered the grounds for relief to track the numbers assigned by the petitioner. In other cases, the discrepancy is noted in the footnotes.

(10) He is actually innocent of the deadly weapon offense and element;

(11) He is actually innocent of enhancement prosecution because the deadly weapon finding was not in the indictment and there was no intelligent meeting of the minds to create the voluntariness of the plea bargain;

(12)[9] No indictment was presented to him, he did not plead guilty to an indictment, he did not hire Allie Booker, the deadly weapon finding is an ex post facto violation, and he was misled;

(13)[10] The state is illegally prosecuting him for an enhancement punishment to which it did not afford him notice in open court;

(14)[11] The trial court did not inform him that he was not entering a plea bargain concession and the trial judge did not ask him about the plea promises and terms of his plea so he was sentenced without a certain sentence.

Doc. No. 1 at 8–34; Doc. No. 17.

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of initially raising the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque*

---

[9] Corresponds to "Ground 15" in the petition. Ground 12 is a reiteration of Grounds 4, 7, and 8 and will be subsumed in the discussion regarding those grounds.
[10] Corresponds to "Ground 17."
[11] Corresponds to "Ground 18." Ground 14 is an amalgamation of Ground 13 and other grounds and will be considered with Ground 13.

4 / 18

*Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.,* 37 F.3d 22 4, 227 (5th Cir. 1994).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter,* 562 U.S. 86, 103 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions"). The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter,* 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. For AEDPA to apply, a state court

need not state its reasons for its denial, nor must it issue findings, nor need it specifically state that the adjudication was "on the merits." *Id.* at 98-99.

To the extent that the petitioner exhausted his claims, they were adjudicated on the merits by state courts. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins,* 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Id.* (citation omitted); *see also Wilson v. Cain,* 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has

been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*

## III. DISCUSSION

Respondent moves for summary judgment, arguing that Handy's claims regarding the state habeas process (Grounds 1 and 2) and his actual innocence claim (Grounds 10 and 11) are not cognizable on federal habeas review and that his other claims lack merit. Handy has filed a response in opposition.

### A. State Habeas Process

Handy contends that the state habeas court unduly delayed his petition because it changed the process in 2016-2018. He claims that the resulting process took two years, which prejudiced his ability to seek federal habeas relief (Ground 1). He also complains that the state habeas court relied on affidavits that were allegedly false or fraudulent (Ground 2).

Grounds 1 and 2 challenge the state habeas process rather than the petitioner's underlying criminal proceedings. Infirmities in the state habeas process are not cognizable on federal habeas review. *See Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004); *Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001). Accordingly, Grounds 1 and 2 will be dismissed.

### B. Actual Innocence

Handy claims that he is actually innocent of a deadly weapon finding in his 2016 case and that his deadly weapon finding from his earlier case was not in his 2016 indictment. As an initial matter, and the state habeas court found that there was no deadly weapon finding in his 2016 conviction, and the record reflects that there was no deadly weapon finding in that case.

To the extent that Handy claims that he is actually innocent of ever having an affirmative

deadly weapon finding, including in his 1997 conviction for aggravated robbery in cause number 727971, he does not establish that his 1997 conviction has been overturned by a writ of habeas corpus or otherwise called into question. The plea papers from that conviction reflect that there was an affirmative finding of a deadly weapon in cause number 727971.[12] Handy does not establish that the deadly weapon finding in his 1997 case was erroneous or that he is actually innocent regarding that finding.[13]

Moreover, stand-alone claims of actual innocence are not grounds for relief on federal habeas corpus review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993). Instead, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." *Id.* at 404. A petitioner seeking to surmount a procedural default through a showing of "actual innocence" must support his allegations with new, reliable evidence that was not presented at trial and must show that it was more likely than not that, in light of the new evidence, no juror acting reasonably would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).

Handy does not assert that his actual innocence claim surmounts a procedural bar to any constitutional claim regarding his conviction; thus, his actual innocence claim is not a viable ground for federal habeas relief. In addition, he presents no evidence that was not available at trial to show actual innocence, and actual-innocence claims "come[ ] before the habeas court with a strong, and in the vast majority of the cases conclusive, presumption of guilt." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005) (quotation omitted). Accordingly, Grounds 10 and 11

---

[12] Doc. No. 34-10 at 31.
[13] As explained in more detail below, a deadly weapon finding in a prior conviction renders the petitioner ineligible for mandatory supervision under Texas law, regardless of whether there was such a finding in his 2016 case. *See* Tex. Gov't Code 508.149(a) (West 2011).

will be dismissed.

### C. Deadly weapon finding and plea bargain claims

Handy claims that there was a breach of his plea agreement because the trial court judge promised that there would be no deadly weapon finding in his 2016 case, but he was prosecuted for a deadly weapon offense and/or element in absentia. He reasons that his 2016 plea agreement was breached because TDCJ determined that he was ineligible for mandatory supervision based on a deadly weapon finding in a prior conviction.

The record reflects that, in the plea hearing, the trial court indicated that there would be no deadly weapon finding in the 2016 case and that the issue of whether Handy made parole was not up to the court but was up to the prison and parole authorities.[14] Contrary to Handy's claims, the record also reflects that the trial court, as promised, did not make a deadly weapon finding in cause number 1481109, his 2016 conviction for terroristic threat.[15] The state habeas court also considered this claim and found that there was no deadly weapon finding in cause number 1481109.[16] The state habeas court's factual finding is not an unreasonable determination of the facts in light of the record, nor is it an unreasonable application of clearly established federal law. Handy's claims that he was prosecuted in absentia for a deadly weapon element or offense (Grounds 5 & 6) are belied by the record and must be dismissed. Likewise, his claim that the trial court reneged on its promise not to make a deadly weapon finding in cause number 1481109 (Count 3) is contradicted by the plea papers and the findings of the state habeas court and is baseless.

---

[14] Doc. No. 34-10 at 78:20-25 ("There will not be an affirmative finding of a deadly weapon made."); see also id. at 79:1-4 ("Whether or not he will make that parole is not up to me. That depends on prison and parole authorities.").
[15] Doc. No. 34-3 at 38.
[16] Doc. No. 34-10 at 21 ¶ 6 (Findings of Fact).

Further, although Handy characterizes parole officials' determination that he is ineligible for mandatory supervision based on his past deadly weapon finding as a "prosecution in absentia," the absence of a deadly weapon finding for his 2016 conviction does not preclude TDCJ parole officials from finding him ineligible for mandatory supervision based on his previous deadly weapon finding, pursuant to established Texas law in section 508.149 of the Government Code. Handy's claims are predicated on his contention that his 1997 conviction for aggravated assault with a deadly weapon finding should not operate to render him ineligible for mandatory supervision. He is incorrect as a matter of law. The version of Texas Government Code § 508.149 that was in effect on August 29, 2015 when Handy committed his offense provides, in pertinent part, that "[a]n inmate may not be released to mandatory supervision if the inmate is serving a sentence for *or has been previously convicted of:* (1) an offense for which the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure[.]" Tex. Gov't Code § 149(a)(1) (West 2015) (emphasis added). Texas Code of Criminal Procedure art. 42.12 § 3g(a)(2) provides that provisions regarding community supervision do not apply:

> (2) to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

Tex. Code Crim. P. art. 42.12 § 3g(a)(2).

Handy's claims regarding his plea center on his contention that parole officials cannot consider his 1997 deadly weapon finding because a trial court in 2016 told him that it would not

make a deadly weapon finding in his new case. Handy cites no authority for the notion that the trial court in his 2016 criminal case had any power to alter his past criminal record or that it was making such a representation at the plea hearing. The state habeas court found that the previous finding of a deadly weapon in Handy's conviction in cause number 727971 can be properly used as matters of parole and/or supervision are considered by TDCJ.[17]

The state habeas court's determination that TDCJ could use Handy's previous deadly weapon finding in considering his eligibility for parole and that the trial court made no deadly weapon finding in his 2016 case are not contrary to, or an unreasonable application of, clearly established federal law, nor are they based on an unreasonable application of the facts from the record as a whole. Accordingly, Grounds 3, 5, 6, and 12 must be denied.

### D. "Unconstitutional counsel" and voluntariness of his plea

Handy claims that his counsel was unconstitutional because he denies ever hiring Ms. Allie Booker as defense counsel or signing a contract to retain her. He alleges that she just showed up out of nowhere to represent him. Among other things, he complains that she just stood there when he talked to the judge during his plea hearing.

To the extent that Handy claims he never hired Booker and that she was not his defense counsel, Ms. Booker submitted an affidavit in the state habeas proceedings refuting that contention.[18] The state habeas court carefully considered Handy's claims regarding his trial counsel and concluded that Booker's affidavit is credible and that the facts asserted in the affidavit are true.[19] Regarding Handy's claim that Booker forged the contract of representation, the state habeas court found that Booker did not sign Handy's name on the contract and that she

---

[17] Doc. No. 34-10 at 23 ¶1 (Conclusions of Law).
[18] *Id.* at 35-39.
[19] *Id.* at 21 ¶ 4 (Findings of Fact).

11 / 18

represented him throughout his entire case, from initial setting through the plea process.[20] This factual finding is supported by the record and is entitled to deference under AEDPA.

To the extent that Handy's claims are broadly construed as claims for ineffective assistance of counsel,[21] he must show that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 57–58 (1985). "[I]n a guilty plea scenario, a [prisoner] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir. 1994). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696.

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland,* 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 58. In the context of a plea bargain, a habeas petitioner may not attack the ineffectiveness of his counsel "*except* insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983) (citations omitted) (emphasis in original).

---

[20] *Id.* at 22 ¶¶ 9, 10.
[21] Handy does not characterize his federal claims as "ineffective assistance of counsel" in his petition, but the state habeas court considered his complaints against Booker to be ineffective assistance of counsel claims.

The state habeas court, based on Booker's affidavit which it found to be credible and true, found that Booker did not abandon Handy because she retained his file, represented him from initial setting through the plea process, and spent many hours with him answering his questions, discussing possible defenses and the ramifications of entering a guilty plea.[22] The state habeas court also found that Booker had Handy psychologically evaluated and he was found to be competent; that Booker kept Handy abreast of all developments in the case and communicated easily and competently with Handy and believes him to be savvy and highly intelligent; and that the trial judge answered all of Handy's questions prior to entering his plea.[23] The state court also found that Handy was properly admonished before entering his plea and that he entered his plea freely and voluntarily.[24] The state habeas court concluded that Handy failed in his burden to show that he was denied ineffective assistance of counsel due to either deficient performance or performance that resulted in prejudice.[25]

To the extent that Handy claims he was not informed or admonished that his prior deadly weapon finding in cause number 727971 could render him ineligible for mandatory supervision as a collateral consequence of his plea, a criminal defendant is adequately informed of the consequences of his guilty plea where he is informed of the maximum sentence and fine for the crime charged. *See James v. Cain*, 56 F.3d 662, 666-67 (5th Cir. 1995); *Barbee v. Ruth*, 678 F.2d 634, 635-36 (5th Cir. 1982). In that respect, a trial judge is not required to inform a defendant of parole eligibility. *See LeBlanc v. Henderson*, 478 F.2d 481, 483 (5th Cir. 1973). Here, the record reflects that the trial court informed Handy of the maximum penalty for his crime ranged from 2-10 years imprisonment with a fine of up to $10,000.00 and that whether he

---

[22] Doc. No. 34-10 at 22 ¶ 9 (Findings of Fact).
[23] *Id.* at 22-23 ¶¶ 11-14.
[24] *Id.* at 23 ¶¶ 13,15; 24 ¶ 3.
[25] *Id.* at 24 ¶ 2 (Conclusions of Law).

made parole was up prison and parole officials and not the trial court.[26] Further, the state habeas court found that Booker discussed the ramifications of entering a guilty plea with Handy and that he entered his plea freely and voluntarily.[27] Handy fails to show that the state court's determination that his plea was voluntary was contrary to, or an unreasonable application of, federal law or an unreasonable factual determination based on the record as a whole.

In that connection, a voluntary plea waives all non-jurisdictional deprivations that occurred prior to the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Therefore, Handy has waived any claim that he did not plead to an indictment and was not presented with an indictment, (Ground 4), and any other claim regarding the pre-plea process. Therefore, Ground 4, and any other claims Handy brings regarding pre-trial process (however enumerated in his pleadings), must be denied.

Handy does not show that the state habeas court's factual determination that Booker did not forge his name on the retainer contract and that he entered his plea freely and voluntarily was unreasonable based on the record as a whole, nor does he show that the state court's legal conclusion regarding Booker's representation was contrary to, or an unreasonable application of, clearly established Supreme Court law under *Strickland*. Accordingly, Grounds 4, 7, 11, 13, and 14 must be dismissed.

### E. Ex post Facto Prosecution

Handy challenges Texas Government Code § 508.149 as an ex post facto law as applied in his case because he contends it punishes him for a crime for which he has already served a sentence. He claims that using the deadly weapon finding in his prior case means that the 1997 case is never final.

---

[26] Doc. No. 34-12 at 167-68 (Admonishments); Doc. No. 34-10 at 79:1-4.
[27] Doc. No. 34-10 at 22 ¶ 9.

"'For an ex post facto violation to occur, two elements must be present: (1) a law must be retrospective, that is, it must apply to events occurring before its enactment, and (2) the new law must create a sufficient risk of increasing the punishment attached to the defendant's crimes.'" *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir. 2004) (quoting *Warren v. Miles*, 230 F.3d 688, 692 (5th Cir. 2000)). In *McCall*, the Fifth Circuit considered and rejected an ex post facto challenge to Texas Government Code section 508.149, holding that it is not retroactive because a criminal defendant's "punishment is based on the date of his most recent offense, which took place after the statute became effective, rather than based on the dates of his earlier offenses." *Id.* at 365. The Fifth Circuit concluded that section 508.149 is not a secondary punishment, but rather, "a statutorily authorized punishment for criminal conduct that has occurred after the passage of the law." *Id.*

Handy committed his terroristic threat on or around August 29, 2015, and the version of Texas Government Code section 508.149 in force on that date provided that a person who has previously been convicted of a crime with a deadly weapon finding is ineligible for mandatory supervision. As in *McCall*, Handy is subject to a statutorily authorized punishment for criminal conduct that has occurred after the passage of section 508.149. His ex post facto and due process objections to Texas Government Code section 508.149 are baseless.

The state habeas court concluded that, under section 508.149, Handy's previous finding of a deadly weapon in cause number 727971 can be properly used because matters of parole and/or supervision are considered by the TDCJ.[28] The state court's conclusion regarding the applicability of section 508.149 in this case is not contrary to, or an unreasonable application of, established federal law. Accordingly, Grounds 8 and 9 must be dismissed.

---

[28] Doc. No. 34-10 at 23 ¶ 1.

Finally, because Handy does not otherwise assert a valid federal basis for habeas relief, his petition must be dismissed.

IV.     **MOTION FOR APPOINTMENT OF COUNSEL**

Handy moves for the appointment of counsel. There is no constitutional right to counsel on federal habeas review. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions") (citation omitted).

The Court observes that Handy has done a capable job of representing himself to date. His pleadings and motions include citations to legal authorities upon which he relies. Further, contrary to Handy's contentions, the central issue he raises—whether the TDCJ can look to his past criminal history to determine whether he is eligible for mandatory supervision—is not novel or complex. Handy does not allege facts showing that the "interests of justice" require the appointment of counsel. *See Schwander v. Blackburn*, 750 F.2d 494, 502-03 (5th Cir. 1985). Accordingly, Handy's Motion for Appointment of Counsel (Doc. No. 43) is denied.

V.      **MOTION FOR AN EVIDENTIARY HEARING**

Handy has requested an evidentiary hearing. Whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2) and is within the district court's discretion. *See Williams v. Taylor*, 529 U.S. 420, 436 (2000) (Congress intended "to avoid unneeded evidentiary hearings in federal habeas corpus" proceedings); *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). Under section 2254(e)(2), if an applicant "failed to develop the factual basis of a claim in State court proceedings," then the federal habeas corpus court may hold a hearing if:

(A) the claim relies on–

>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)–(B). An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims." *Robinson*, 151 F.3d at 268. This Court has been able to resolve all issues raised in this case by referring to the pleadings and the state court record. Accordingly, Handy's motion for an evidentiary hearing (Doc. No. 40) is denied.

## VI. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 282 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, the Court concludes that jurists of reason would not debate whether the Court's ruling in this case was correct. Therefore, a certificate of appealability will not issue.

VII. **CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Doc. No. 33) is **GRANTED**.

2. The habeas corpus petition is **DISMISSED** with prejudice.

3. The petitioner's motions for appointment of counsel (Doc. No. 43) and for an evidentiary hearing (Doc. No. 40) are **DENIED**.

4. All other pending motions (Doc. Nos. 10, 26, 27, 31, 44, 46) are **DENIED as MOOT**.

5. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 11th day of June 2020.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE